UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ERNEST THOMAS, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:14-CV-17 |
| | § | |
| HCC-HIGH CAPACITY COIL, LLC, | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

Pending is Plaintiffs' Opposed Motion For Certification of Collective Action and Request for Notice to Potential Class Members. (D.E. 27). This motion has been referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B). (D.E. 05/27/2014).  Having considered the parties' briefing, arguments, the applicable legal authorities, and all matters of record, the undersigned recommends that Plaintiffs' Opposed Motion for Certification be **GRANTED as modified** with a more narrowly tailored putative class as set forth below.  It is further recommended that the parties be ordered to file a joint proposed notice and consent form within seven days of the Court granting conditional certification and any unresolved objections to the forms be referred to the undersigned for disposition.

## I.    BACKGROUND

Plaintiff Ernest Thomas ("Thomas") and Juan Ramon ("Ramon") live in Corpus Christi, Texas.  Plaintiff Jose Quintanilla ("Quintanilla") lives in San Diego, Texas. (D.E. 1, p. 3).  Plaintiffs were employees of Defendant High Capacity Coil, LLC ("HCC") for various periods between 2011 and 2013. (D.E. 21, p.9).   Plaintiffs allege that they and potential class members are "current and former non-exempt employees of defendant HCC who were coil tubing operators and subjected to the same illegal pay system under which Plaintiffs worked and were paid." (D.E. 1, p. 3).  Defendant HCC is a business involved in the oil and gas industry.[1]  Plaintiffs allege that Plaintiffs and potential class members were not paid overtime for hours worked in excess of forty hours per workweek.  (D.E. 1, p. 2). Plaintiffs maintain that HCC did not pay any overtime at all.  (D.E. 27, p. 4).   In addition to the original Plaintiffs, fourteen (14) persons have filed consent forms to become party plaintiffs. (D.E. 3, 5-13, 18, 20, 29, & 30).

## II.   PROCEDURAL HISTORY

On January 20, 2014, Plaintiffs Thomas, Ramon, and Quintanilla filed this lawsuit against HCC, alleging HCC was their employer and violated sections of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"). (D.E. 1).  Plaintiffs allege that they and the potential class members performed work that was not exempt under the FLSA. They further allege they were not paid overtime for hours worked in excess of forty hours per

---

[1] Plaintiffs allege that HCC provides coil tubing, nitrogen services and equipment to the oil and gas and pipeline industries in Louisiana and Texas. (D.E. 1, p. 6). Defendant's Answer indicates HCC ceased its coil tubing, nitrogen services and equipment services in November 2013 and its former locations are now being leased by a different entity. (D.E. 21, p. 9).

workweek and that non-discretionary bonuses should be included in the calculation of overtime pay.  (D.E. 1, p.1-2).   On March 20, 2014, HCC filed an Answer and Affirmative Defenses.  (D.E. 21).

On May 5, 2014, Plaintiffs filed their Opposed Motion for Certification of Collective Action and Request for Notice to Potential Class Members.  (D.E 27).  Plaintiffs seek conditional certification of a collective action consisting of the following putative class:

> **ALL PERSONS EMPLOYED BY HCC – HIGH CAPACITY COIL, LLC -- WITHIN THE PAST THREE YEARS, WHO RECEIVED JOB BONUSES BUT WERE NOT PAID OVERTIME.[2]**

 Plaintiffs maintain conditional certification is appropriate because additional individuals who were employed by HCC suffered injury as a result of HCC's violations of the FLSA. These Potential Class Members are "similarly situated" to Plaintiffs because (1) they all worked for HCC, (2) they had similar job duties and titles, (3) they had the same hourly pay structure, (4) they had the same non-discretionary bonus payment structure, and (5) they were all required or permitted to work overtime without receiving time and a half pursuant to the FLSA.  Plaintiffs seek to proceed in this FLSA action collectively with other similarly situated former employees of HCC.

Therefore, Plaintiffs move the Court to: (1) conditionally certify this action for purposes of notice and discovery; (2) order that judicial notice be sent to all Potential Class Members; (3) approve the form and content of Plaintiffs' proposed judicial notice and reminder notice; (4) order HCC to produce to Plaintiffs' counsel the contact information

---

[2] *See* D.E. 27, p. 2.

for each Potential Class Member; (5) authorize a sixty day notice period for Potential Class Members to join the case; and (6) authorize notice to be sent via First Class Mail, e-mail, and telephone to the Potential Class Members.  (D.E. 27, p. 3).

HCC opposes conditional certification and filed its Memorandum in Opposition to Plaintiffs' Motion for Collective Action Certification (D.E. 28) on June 16, 2014.  HCC maintains conditional certification should be denied because Plaintiffs have not pointed to a common policy or practice that existed throughout the area of employment operations, which includes HCC offices in Shreveport, Midland, Navasota, and Alice; and (2) Plaintiffs are not similarly situated and individualized issues predominate. (D.E. 28, p. 3-7).  HCC essentially argues Plaintiffs' motion for conditional certification is overly broad because Plaintiffs seek to include all of HCC's former employees and locations.  HCC objects, in part, because Plaintiffs' proposed collective action would include employees who work in executive, administrative and professional capacities and are not subject to the FLSA's overtime provision. (D.E. 28, p. 5).  HCC also argued at the hearing on the motion on July 24, 2014, that the Plaintiffs have the burden of proof of establishing that conditional certification is appropriate and Plaintiffs' evidence is limited to HCC operations in Alice, Texas.[3]  HCC, therefore, argues there is no showing that potential class members outside of the Alice, Texas area of operations are similarly situated.

HCC further maintains that if conditional certification is granted, there are certain deficiencies to the Plaintiffs' proposed notice.

---

[3] Plaintiffs filed affidavits/declarations of named Plaintiffs Ernest Thomas and Juan Ramon. (D.E. 27-1, 27-2). These Plaintiffs live in Corpus Christi and worked for HCC within the Southern District of Texas. (D.E. 1, p. 3). During the hearing on July 24, 2014, the parties did not dispute that these plaintiffs worked at HCC's Alice location.

## III.   ANALYSIS.

### A.   Legal Standard for Conditional Certification.

The FLSA allows collective actions to be brought on behalf of "similarly situated" workers.  Under the FLSA, an employee may file a lawsuit for unpaid overtime wages on behalf of himself as well as other "similarly situated employees" who "opt-in" to the suit. 29 U.S.C. § 216(b); *Walker v. Honghua Am., LLC*, 870 F.Supp.2d 462, 464 n. 2 (S.D. Tex. 2012). The term "similarly situated" is not defined in the FLSA. *See, e.g.*, 29 U.S.C. §§ 203, 216.  Courts in this District interpret "similarly situated" to mean an employee who is "affected by a common policy, plan, pattern, or practice" as the one at issue in the plaintiff's lawsuit.  *McKnight v. D. Hous., Inc.,* 756 F. Supp. 2d 794, 803 (S.D. Tex. 2010).

Where a plaintiff seeks to bring a collective action on behalf of others, the plaintiff must seek certification and request notice be approved by the district court, and the putative class members must consent in writing to become a party to the action.  29 U.S.C. § 216(b).  The district court then has the discretion whether to approve the collective action and facilitate notice to potential plaintiffs. *Simmons v. T-Mobile USA, Inc.*, Civ. A. No. 4:06-cv-01820, 2007 WL 210008, at *4 (S.D. Tex. Jan. 24, 2007).  "A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources.  The judicial system benefits by the efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity." *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 170 (1989).

When considering motions for conditional certification under the FLSA, district courts in the Fifth Circuit usually proceed under the *Lusardi* approach— i.e., it is

undertaken early in the case and a plaintiff's allegations that "similarly situated" workers exist and wish to opt-in to the suit are reviewed "leniently." *Lusardi v. Xerox, Corp.*, 118 F.R.D. 351 (D.N.J. 1987). Whether to certify a suit as a collective action under the FLSA is a decision committed to the discretion of the court. *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213 (5th Cir. 1995) (overruled on other grounds by *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 90–91 (2003)). Courts in the Southern District of Texas generally use the *Lusardi* approach to determine whether a collective action is warranted. *See, e.g.,* *Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 465 (S.D. Tex. 2012).

The *Lusardi* analysis proceeds in two stages: (1) a "notice stage", followed by (2) a decertification stage. *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 n. 2 (5th Cir. 2008) (citations omitted). The notice stage takes place early in the case, before the parties have a chance to conduct substantive discovery. *Blake v. Hewlett–Packard Co.*, No. 4:11–CV–592, 2013 WL 3753965, at *4 (S.D. Tex. July 11, 2013). In contrast, the decertification process occurs after the parties have had ample opportunity for discovery. *Id.* At the first stage, the court makes a preliminary determination whether there are any potential plaintiffs who may be similarly situated to the plaintiff in the pending lawsuit. *Mooney*, 54 F.3d at 1213–14.

The plaintiff seeking conditional certification must present at least a "minimal showing" that "(1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist, (2) that those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted, and (3) that those individuals want to opt-in to the lawsuit." *Walker*, 870 F.Supp.2d at 465–66 (citations omitted).

Because this analysis occurs before the discovery process, the burden on the lead plaintiff is "lenient and typically results in conditional certification." *See e.g., Walker,* 870 F. Supp. 2d at 465. Courts often make the determination based on the pleadings and any available affidavits. *Id.*

The second stage of *Lusardi* occurs after discovery has taken place. Upon a defendant's motion to decertify, the trial court reviews the available evidence collected in discovery. *Id.* If the court finds the evidence shows the plaintiffs are not in fact "similarly situated" to the original lead plaintiff, then the class is decertified, the opt-in plaintiffs are dismissed, and the original plaintiff proceeds individually. *Id.* The present case is at the "notice stage" of the *Lusardi* analysis. At this stage, the Court's decision is made using a fairly lenient standard and the plaintiffs need only make a minimum showing to guide the Court's determination whether to issue notice to potential class members. *Mooney,* 54 F.3d at 1214.

> **B.     Application of the Law to the Present Case.**
>
> > **1.     Whether reasonable basis for crediting the assertions that aggrieved individuals exist.**

Plaintiffs were employed as operators for HCC. They allege they worked overtime without receiving time and a half pursuant to the FLSA and further allege the overtime calculation should have included certain non-discretionary bonus payments. (D.E. 1, pp. 6-7). The FLSA requires non-exempt employees who work more than forty hours in a workweek be paid at one-and-one-half times the "regular rate" of pay. 29 U.S.C. § 207(a)(1).

Plaintiff Ernest Thomas and Juan Ramon state in their respective declarations that they regularly worked in excess of 40 hours a week without ever receiving overtime compensation.  (D.E. 27-1, 27-2).  They further indicate their co-workers also did not receive overtime compensation.  HCC does not contend in its Answer (D.E. 21)  or Memorandum in Opposition to Plaintiffs' Motion (D.E. 28) that it paid overtime wages to Plaintiffs.  HCC maintains payment of overtime was not required due to various statutory exemptions for executives, professional and motor carriers.  The merits of the case need not be decided now.  *See McKnight,* 756 F.Supp.2d at 802 (Neither stage of certification is an opportunity for the court to assess the merits of the claim by deciding factual disputes or making credibility determinations.).

Many of HCC's objections to conditional certification can be resolved with a more narrowly tailored class.  The notice submitted by Plaintiffs would include all persons employed by HCC in the past three years who received job bonuses but were not paid overtime.  The proposed class is too broad and would include persons who were not similarly situated because it would potentially include everyone from the lowest level employee to the CEO.  Narrowing the class to include only non-management field personnel would establish a class of persons with similar employment positions.[4]

HCC had oil field services operations in Texas and Louisiana. (D.E. 1, p. 6).  HCC's Employee Handbook sets forth its companywide employment policies, including compensation and overtime.  (D.E. 28-1, 7-8).  The handbook, by its own terms, appears to cover HCC employees regardless of the location of their work.  Thus, for purposes of

---

[4]  On July 24, 2014, at the hearing on the pending motion, Counsel for Plaintiffs did not object to narrowing the class to non-managerial field workers and suggested doing so may be appropriate.

determining overtime compensation, HCC non-managerial field personnel working in Alice, Texas should have been treated the same as HCC non-managerial field personnel working in other locations. Therefore, a reasonable basis exists for crediting the assertions that aggrieved individuals exist.

> **2.      Whether aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted.**

Limiting the scope of this collective action to non-managerial field personnel would ensure the allegedly aggrieved individuals are similarly situated to Plaintiffs in relevant respects.  The individuals would all be persons employed by HCC in non-managerial positions who worked in field operations.  While the specific job titles or responsibilities may differ slightly, they are similar in that they are field workers complaining of a common policy of not being properly compensated for working overtime.  There is no reason at the present time to believe that among the non-managerial field workers there would be significantly different claims or defenses.  Plaintiffs are not required at this stage of the proceedings to present evidence that would survive a motion for summary judgment. *McKnight,* 756 F. Supp. 2d at 803 (citations omitted).  It reasonable at this stage of the litigation to believe HCC non-managerial employees who worked in field operations were treated similarly with respect to not being paid overtime compensation.

> **3.      Whether those individuals want to opt-in to the lawsuit.**

Both parties represented to the Court that there are approximately 244 non-managerial field personnel who worked for HCC during the relevant time.  As of July 26,

2014, a total of seventeen (17) former HCC employees have opted-in to this lawsuit. (D.E. 1-1, 1-2, 1-3, 3, 5 through 13, 18, 20, 29, & 30).   HCC maintains three of the opt-in Plaintiffs are exempt employees under the FLSAs Executive Exemption. (D.E. 28, p. 5). While not deciding the issue now, the number of remaining opt-in Plaintiffs is sufficient to indicate the putative class members want to opt-in to this lawsuit.

## IV.   CONCLUSION AND RECOMMENDATION

Having considered the briefing, exhibits and applicable law, the undersigned is satisfied the Court should conditionally certify this collective action and notice should be issued.  Plaintiffs have established other individuals desire to opt-in and are "similarly situated" with respect to job requirements and in their claims of not being properly compensated for working overtime.

Therefore, the undersigned respectfully recommends the Court **GRANT as modified** the Plaintiffs' Opposed Motion For Certification of Collective Action and Request for Notice to Potential Class Members. (D.E. 27). The undersigned recommends the Court narrow the collective action to include non-managerial field workers and suggests the notice to potential plaintiffs be worded as follows:

> **ALL   NON-MANAGERIAL   FIELD   PERSONNEL EMPLOYED BY HCC -- HIGH CAPACITY COIL, LLC - - WITHIN THE PAST THREE YEARS, WHO RECEIVED DAY RATE[5] JOB BONUSES BUT WERE NOT PAID OVERTIME.**

---

[5] Counsel for Plaintiffs explained describing the bonuses as "day rate" would exclude discretionary bonuses, such as holiday bonuses, which are not at issue in the pending litigation.

Counsel for Plaintiffs' expressed his concern that the statute of limitations is not tolled with respect to other plaintiffs unless and until they opt in to the case. Therefore, the undersigned further recommends the Court order the parties to file a proposed Joint Notice To Potential Plaintiffs and a proposed Joint Notice of Consent within seven (7) days of the Court's order granting conditional certification.

Finally, it is respectfully recommended that the Court refer the case to the undersigned for case management, including handling objections to the notice and consent forms, entering an order regarding setting the notice period, posting/sending the notice to potential class members, the disclosure of putative plaintiffs and any other pending matters.

Respectfully submitted this 29th day of July, 2014.

Jason B. Libby
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).